Susan Martin (*pro hac vice* app to be filed)
Jennifer Kroll (*pro hac vice* app to be filed)
Michael Licata (*pro hac vice* app to be filed)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

Teresa S. Renaker, Cal. Bar No. 187800
Renaker Hasselman Scott, LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Telephone: (415) 653-1733
Facsimile: (415) 727-5079
teresa@renakerhasselman.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| David Knaus,<br><br>Plaintiff, on behalf of himself and all others similarly situated<br><br>v.<br><br>Board of Trustees of the Northern California Pipe Trades Pension Plan; The Northern California Pipe Trades Pension Plan,<br><br>Defendants. | Case No.: 3:21-cv-1266<br><br>**COMPLAINT**<br><br>**CLASS ACTION** |

Plaintiff David Knaus, by and through undersigned counsel, hereby brings this

action on his own behalf and on behalf of all others similarly situated under the Employee Retirement Income Security Act, as amended, ("ERISA") 29 U.S.C. § 1001 *et. seq.* to recover pension benefits under the terms of a pension plan and for declaratory, injunctive and other equitable relief for violations of ERISA's actuarial equivalence, vesting and nonforfeiture requirements, for breaches of fiduciary duty and for violations of ERISA's claim procedure and disclosure requirements and for statutory penalties for the failure to provide plan documents that Mr. Knaus requested from the Plan Administrator.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to § 502(e)(1) of ERISA, 29 U.S.C. §§1132(e), and 28 U.S.C. § 1331.

2.    Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the claims arose, and the breaches took place in the Northern District of California and the pension plan is administered in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

3.    Pursuant to Civil L.R. 3-2(c) and 3-5(b), this action should be assigned to the San Francisco or Oakland Division because a substantial part of the events or omissions that give rise to the claim occurred in Contra Costa County.

## PARTIES

4.    Plaintiff David Knaus was and is a steamfitter who was employed from in or around June 1995 through in or around October 2010 and again from in or around January 2012 to the present by various employers under collective bargaining agreements and/or

area trade agreements between those employers and United Association of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry, Local 342 of the United States and Canada, AFL-CIO ("Local Union"), a subordinate body with the United Association of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry (UA), pursuant to which employers contributed to the Northern California Pipe Trades Pension Plan ("Plan"). Mr. Knaus resides in Contra Costa County.

5.    Mr. Knaus is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

6.    Defendant Plan is a defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants working in the plumbing and pipe trades and their beneficiaries, including Plaintiff and his beneficiary. The Plan is administered in part in Contra Costa County.

7.    Defendant Board of Trustees of the Northern California Pipe Trades Pension Plan is the Administrator of the Plan ("Board") and a fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

## GENERAL ALLEGATIONS

8.    From in or around June 1995 through in or around October 2010 and from in or around January 2012 to the present, Mr. Knaus accrued benefits under the Plan through his work as steamfitter for various employers that had collective bargaining agreements pursuant to which employers were required to contribute to the Plan.

9.     The Plan document dated January 1, 2009, the Plan document in effect in 2010 when Mr. Knaus briefly left covered employment and commenced receipt of early retirement benefits, provides that participants who meet the age and service criteria for early retirement pension benefits will receive their normal retirement benefits subject to an actuarial reduction as follows:

**EARLY RETIREMENT BENEFITS** - Effective January 1, 1994 Early
Retirement Benefit shall be equal to a Normal Retirement Benefit reduced as
follows:
a. For each month the effective date of early retirement precedes age 65 to age 60,
one-quarter of one percent (¼ of 1 % ); and
b. For each month the effective date of Early Retirement precedes age 60, one-half
of one percent (½ of 1 % ).

10.     Mr. Knaus commenced receipt of monthly early retirement benefits effective December 1, 2010, when he was 59 years old and collected those benefits for one year, through December 2011.

11.     At the time of his early retirement, Mr. Knaus had 22.77 years of benefit credit and had earned a monthly pension benefit payable at normal retirement age (generally age 65), of $1,919.00.

12.     When he commenced receipt of his early retirement benefits, Mr. Knaus's normal retirement pension benefit of $1,919 was actuarially reduced by 23% to $1,477.63 because his retirement date was 76 months prior to age 65.

13.     The Plan provides that early retirees who return to steamfitter jobs covered under the Plan (referred to in the Plan as "Industry Service" and also referred to herein as "covered employment") prior to age 65 will have their retirement benefits suspended and may not start collecting benefits again until they reach normal retirement age as follows:

(2) **Before Normal Retirement Age.** Until retired Employees reach Normal Retirement Age, benefits will be suspended for any month in which they perform any amount of work whatsoever in Industry Service, or, if not actually in Industry Service, any amount of work in any other industry directly or indirectly related to Industry Service, when using the same or similar tools used by Employees in Industry Service, wherever or for whomever the work is performed, except for a disability retiree working under any approved rehabilitation program. Once suspended, benefits will not again resumed [sic] until Normal Retirement age, even if the Employee leaves Industry Service before then.

14.     In or around December 2011, Mr. Knaus notified Defendants that he was returning to work in covered employment effective January 3, 2012.

15.     The Plan document in effect when Mr. Knaus commenced receipt of early retirement benefits provides that if benefits have been suspended, upon resumption of benefits, a retiree shall receive his full normal retirement benefit with an adjustment for the pension benefits paid and the service credit earned during the period of subsequent employment in Industry Service as follows:

**Recalculation Upon Resumption.** If a benefit is suspended by reason of the return to Industry Service of a retiree after Normal Retirement Age, the benefit will be resumed at the same rate but recalculated to take into account any additional service credited for any month in which the retiree suffered the suspension because of having worked in excess of forty (40) hours. If an actuarially reduced benefit is suspended because of the return to Industry Service of a retiree prior to Normal Retirement Age, the benefit payable upon resumption shall be the full normal benefit, actuarially recalculated to take into account both benefits paid and additional service credited in the interim.

16.     The Plan's summary plan descriptions ("SPD"), including the 2005 SPD in effect when Mr. Knaus commenced receipt of early retirement benefits, fail to summarize the terms of the Plan accurately and there are material differences between the terms set forth in the Plan and those stated in the SPD.

17.     The SPD fails to comply with the requirement to set forth the circumstances that can lead to a loss of benefits.

18.     The SPD also fails to disclose the Plan's benefit provisions pursuant to which early retirees who return to work prior to normal retirement age are entitled to receive their full normal retirement benefits with an adjustment for the pension benefits paid and the additional service credit earned following their return to Industry Service.

19.     Defendants suspended Mr. Knaus's benefits effective January 1, 2012 and have not yet commenced resumed paying his retirement benefits.

20.     Mr. Knaus has been working as a pipefitter and earning benefit credit under the Plan at various times between January 2012 and November 2020.

21.     Mr. Knaus has not worked since in or around November 2020.

22.     From January 1, 2012 when he returned to covered employment and his benefits were suspended through the present Mr. Knaus has earned 10.84 additional years of benefit credit under the Plan.

23.     In addition, because Mr. Knaus is past his normal retirement date and has not yet retired or commenced benefits but ceased working in or around November 2020, he is entitled to an actuarial increase when he retires to account for the delay in commencement of benefits.

24.     In or around April 2020, at the age of 68, in anticipation of retiring Mr. Knaus requested an estimate of his benefits.

25.     In response to Mr. Knaus's request, Defendants provided an estimate to Mr. Knaus dated April 22, 2020.

26.     In violation of the unambiguous terms of the Plan, the estimate provided to Mr. Knaus indicated that when he resumed benefits, he would receive the same actuarially reduced early retirement benefit he was previously receiving before his benefits were suspended plus the benefits he earned after he returned to work in January 2012.

27.     By letter dated June 6, 2020, Mr. Knaus submitted an administrative appeal requesting that the early retirement reduction to his pension benefits be removed in accordance with the Plan document.

28.     By letter dated June 26, 2020, Defendants denied Mr. Knaus's appeal.

29.     Thereafter in response to a November 6, 2020 letter submitted by Plaintiff's attorneys, Defendants again communicated a violation of the terms of the Plan and reiterated that upon his retirement, the Plan would only pay Mr. Knaus the reduced early retirement benefits calculated when he was 59 (and paid for one year) plus the additional benefits earned following his return to work in 2012.

30.     Mr. Knaus has fully exhausted any required administrative remedies.

31.     Defendants' calculation of Mr. Knaus's benefits violates the terms of the Plan.

32.     Defendants' calculation fails to comply with the requirement to pay Mr. Knaus's his full normal retirement benefit at the time of retirement that includes all of Mr. Knaus's accrued benefits earned under the Plan through the present adjusted to take into account the one year of early retirement benefits he was paid from December 2010 through December 2011.

33.     Defendants' failure and refusal to provide Mr. Knaus with his full unreduced normal retirement benefit taking into account all credit earned with an adjustment for the one year of benefits he was paid will result in a reduction of Mr. Knaus's benefits upon the resumption of his pension benefits.

34.     During the year Mr. Knaus collected early retirement benefits he received a total of $ 19,269.25.

35.     Under the terms of the Plan and ERISA Defendants were required to determine an adjustment to Mr. Knaus' normal retirement benefits that would reflect a reasonable reduction of the $19,269.25 in benefits Mr. Knaus received divided over the monthly benefits he is expected to receive over his lifetime.

36.     Under the terms of the Plan and ERISA, if Mr. Knaus elects to commence benefits as of March 1, 2021, Mr. Knaus would be entitled to receive a monthly benefit of at least $3,404 per month which includes benefits for all of his service minus an offset for the one year of benefits he received plus an actuarial increase to account for the delay in receipt of normal retirement benefits for the period he was not working in industry service.

37.     However, Defendants' calculations indicate that they intend to pay Mr. Knaus at most $2,958 which is at least $445 less per month than Mr. Knaus is entitled to receive under the terms of the Plan and ERISA.

38.     Upon information and belief, the Plan is similarly incorrectly applying the terms of the Plan for participants who commence early retirement benefits and return to work.

39.     By letter dated July 1, 2020, Mr. Knaus made a written request to the Plan Administrator for copies of Plan documents including all of the Plan documents in effect during his participation in the Plan.

40.     By letter dated August 5, 2020, the Plan Administrator provided only the current Plan document but did not provide any prior Plan documents including, *inter alia*, the Plan document in effect when he commenced early retirement benefits in 2010.

41.     By letter dated December 17, 2020, Plaintiff again requested copies of the prior Plan documents, including a copy of the Plan document in effect when Mr. Knaus commenced early retirement benefits and all prior Plan documents in effect during his participation in the Plan.

42.     By email dated December 21, 2020, Defendants provided a copy of the restated Plan document effective January 1, 2009 but did not provide any of the other prior Plan documents Plaintiff requested.

43.     The Board of Trustees is the Plan Administrator and is composed of equal numbers of individuals who are appointed by employers or their representatives who are required to make contributions to the Plan and individuals who, upon information and belief, are appointed by the various local unions and other subordinate bodies of the UA participating in the Plan including the Local Union.

44.     The UA representatives on the Board of Trustees represent the interests of active employees during the collective bargaining process; they do not represent retirees in the collective bargaining process.

45.    The UA representatives on the Board of Trustees must answer to the active employees who elect them. Retired UA employees have no vote in local union elections and do not get to elect any of the Trustees that serve on the Board of Trustees.

46.    The UA representatives on the Board of Trustees have a conflict of interest with respect to the interests of retired Plan participants.

47.    Employer Trustees have a conflict of interest with respect to Plan participants and retired Plan participants.

48.    Employer Trustees have a financial interest in the Plan because they are or represent the contributing employers that contribute the money used to fund the benefits under Plan and because they may be liable under ERISA's withdrawal liability provisions if they withdraw from the Plan and the Plan is underfunded.

49.    This type of Board of Trustees, that purports to represent retirees but provides no retiree representation on its Board of Trustees, has a structural conflict of interest.

## CLASS ALLEGATIONS

50.    In addition to Plaintiffs' individual claim for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action consisting of the following class:

> All Plan participants (and their surviving spouses and eligible beneficiaries) whose retirement benefits commenced or during the pendency of this action will commence prior to age 65 and whose benefits were or will hereafter be suspended.

51.    The Form 5500 Annual Return Report for the Plan for 2019 required to be

filed with the Department of Labor that was filed in or around September 2020 states that as of December 21, 2019, there were 4,242 active and retired Participants in the Plan.

52.    The Class is so numerous that joinder is impracticable including because of the number of Class Members and because the members of the class are geographically dispersed throughout the United States.

53.    There are questions of law and fact common to the members of the Class that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations of the Plan and ERISA including, *inter alia*:

      a.    whether Defendants violated the terms of the Plan and ERISA by failing to calculate and provide benefits required under the Plan for early retirees who return to work in suspendible employment;

      b.    whether Defendants violated ERISA's requirements to provide accurate summary plan descriptions; and

      c.    whether Defendants breached their fiduciary duties by, *inter alia*: attempting to circumvent the Plan's express provisions governing calculation of benefits following a suspension of benefits; utilizing outdated mortality rates to calculate reductions and offsets which do not comply with ERISA's requirements; failing to maintain the Plan in accordance with ERISA's written Plan requirements; and failing to comply with ERISA's disclosure requirements;

54.    Named Plaintiff will fairly and adequately represent the interests of the Class

Members. Mr. Knaus has diligently pursued his claims and engaged the undersigned experienced ERISA and class action counsel.

55.     The prosecution of separate proceedings by the individual members of the Class would create a risk of inconsistent or varying adjudications that would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

56.     Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the Class as a whole by engaging in the same violations of ERISA and the terms of the Plan with respect to the class, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the Class as a whole.

57.     A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

    a.  the Class Members have suffered from the same violations of the terms of the Plan and ERISA and the numbers and geographic diversity of Class Members make joinder impractical; and

    b.  the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for some individual participants likely constitute a significant and recurring obstacle to the ability of individual Class Members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these complex ERISA

violations in separate legal proceedings yet likely have caused and will

continue in the future to cause loss of valuable pension and ERISA rights

unless remedied through injunctive and other appropriate relief.

## COUNT I
## (TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN)

58.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs

as though fully set forth herein.

59.     By the acts and omissions set forth herein, Defendants violated the terms of

the Plan.

60.     Section 502 (a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that:

A civil action may be brought -

> (1) by a participant or beneficiary -.. .
> (2) to recover benefits due to him under the terms
> of the plan, to enforce his rights under the terms
> of the plan, or to clarify his rights to future
> benefits under the terms of the plan.

61.     As a proximate result of Defendants' violations of the terms of the Plan,

Plaintiff and Class Members have been and will be harmed and will be denied benefits due

under the terms of the Plan and their rights to benefits have been thwarted.

62.     As a proximate result of Defendants' violations of the terms of the Plan,

Plaintiff and the Class Members are entitled to an order declaring that Defendants violated

the terms of the Plan, enjoining Defendants from violating the terms of the Plan and

directing Defendants to pay Plaintiff and Class Members all benefits due and to become

due together with prejudgment interest, attorneys' fees and costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II
### (TO REDRESS VIOLATIONS OF ERISA'S ACTUARIAL EQUIVALENCE, NONFORFEITURE AND VESTING REQUIREMENTS)

63.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

64.     ERISA § 203(a), 29 U.S.C. § 1053(a), provides in relevant part that:

Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
(1) A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
(2)(A)(i) In the case of a defined benefit plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).
(ii) A plan satisfies the requirements of this clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

65.     ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) provides in pertinent part: "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age ... the employee's accrued benefit ... shall be the actuarial equivalent of such benefit ..."

66.     By the acts and omissions complained of above, including by using inappropriate actuarial equivalence factors that inflate offsets under the Plan, Defendants violated ERISA §§ 203 and 204 and applicable regulations.

67.     As a proximate result of Defendants' violations of ERISA §§ 203 and 204, 29 U.S.C. §§ 1053 and 1054, Plaintiff and Class Members have been harmed and, *inter alia*: have been deprived of vested benefits, and Defendants have been unjustly enriched.

68.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

69.    Plaintiffs and Class Members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order reforming the Plan to provide actuarially equivalent benefits and correct offsets of benefits where such offsets are used under the Plan, declaring that Defendants violated ERISA §§ 203 and 204 and applicable regulations, enjoining Defendants from violating ERISA §§ 203 and 204 and to recalculate and pay Plaintiff all Class Members' benefits under the Plan as reformed, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, together with all other appropriate make-whole relief including pre-judgment and post-judgment interest, attorneys' fees, and costs.

## COUNT III
## (TO REDRESS VIOLATIONS OF ERISA'S WRITTEN PLAN AND DISCLOSURE REQUIREMENTS)

70.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

71.    Section 101 of ERISA, 29 U.S.C. § 1021, Duty of Disclosure and Reporting provides in relevant part:

(a) Summary plan description and information to be furnished to participants and beneficiaries

Case No. 3:12-cv-1266
COMPLAINT                                                                    15

1
2
3
4
5

> The administrator of each employee benefit plan shall cause to be
> furnished in accordance with section 1024(b) of this title to each
> participant covered under the plan and to each beneficiary who is
> receiving benefits under the plan--
> (1) a summary plan description described in section 1022(a)(1) of this
> title; and
> (2) the information described in subsection (f) and sections 1024(b)(3)
> and  1025(a) and (c) of this title.

6
7
8
9

72.      Section 102 of ERISA, 29 U.S.C. § 1022, Summary Plan Description,

provides, *inter alia*, that summary plan descriptions shall describe the plan including the

benefits in a manner that is comprehensive and manner calculated to be understood by the

average plan participant as follows:

10
11
12
13
14
15
16
17

(a)   A summary plan description of any employee benefit plan shall be
furnished to participants and beneficiaries as provided in section 104(b)
of this title. The summary plan description shall include the information
described in subsection (b) of this section, shall be written in a manner
calculated to be understood by the average plan participant, and shall
be sufficiently accurate and comprehensive to reasonably apprise such
participants and beneficiaries of their rights and obligations under the
plan. A summary of any material modification in the terms of the plan
and any change in the information required under subsection (b) of this
section shall be written in a manner calculated to be understood by the
average plan participant and shall be furnished in accordance with
section 104(b)(1) of this title.

18
19
20
21
22
23
24
25
26

(b)   The summary plan description shall contain the following information:
. . . the plan's requirements respecting eligibility for participation and
benefits; a description of the provisions providing for nonforfeitable
pension benefits; circumstances which may result in disqualification,
ineligibility, or denial or loss of benefits; the procedures to be followed
in presenting claims for benefits under the plan including the office at
the Department of Labor through which participants and beneficiaries
may seek assistance or information regarding their rights under this
chapter and the Health Insurance Portability and Accountability Act of
1996 with respect to health benefits that are offered through a group
health plan (as defined in section 1191b(a)(1) of this title), the remedies
available under the plan for the redress of claims which are denied in
whole or in part (including procedures required under section 503 of
this title).

27
28

73.    Section 104(b) of ERISA, 29 U. S. C. § 1024(b), Publication of summary plan description and annual report to participants and beneficiaries of plan, provides in relevant part:

(1)    The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title–
    (A)    within 90 days after he becomes a participant, or (in the case of a (beneficiary) within 90 days after he first receives benefits, or
    (B)    if later, within 120 days after the plan becomes subject to this part. The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 1022 of this title every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan... .
(2)    The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).
(3)    Within 210 days after the close of the fiscal year of the plan, the administrator (other than an administrator of a defined benefit plan to which the requirements of section 1021(f) of this title applies) shall furnish to each participant, and to each beneficiary receiving benefits

under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

74.     Section 402 of ERISA, 29 U.S.C. § 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

75.     By the acts and omissions complained of above, including by failing to follow the terms of the written Plan document and by failing to publish accurate summary plan descriptions notifying participants of their rights and by failing to disclose material terms of the Plan Defendants violated ERISA §§ 101, 102, 104 and 402, 29 U.S.C. §§ 1021, 1022, 1024 and 1102, and regulations thereunder.

76.     As a proximate result of Defendants' violations of ERISA §§ 101, 102, 104, and 402, Plaintiff and Class Members have been harmed and, *inter alia*: have been deprived of material disclosures required to be made by Plan fiduciaries and have been deprived of the ability to make timely, informed decisions regarding their retirement benefits, their employment following retirement, their savings, and their decisions regarding whether and when to retire, and Defendants have been unjustly enriched.

77.     Plaintiff and Class Members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA §§ 101, 102, 104, and 402 and applicable regulations, enjoining Defendants from failing to comply with their disclosure obligations and from applying offsets to retirement benefits for participants whose benefits were suspended for a return to employment and to recalculate and pay all Class Members' benefits, together with all other appropriate

equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, surcharging the trustees and reforming the Plan as necessary or appropriate, together with pre-judgment and post-judgment interest, attorneys' fees, and costs.

## COUNT IV
### (TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)

78.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

79.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall   discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
   (A) for the exclusive purpose of:
      (i) providing benefits to participants and their beneficiaries; and
      (ii) defraying reasonable expenses of administering the plan;
   (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

                               ***

   (D)   in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

80.    Defendants have a fiduciary responsibility to provide Plaintiffs and Class Members with truthful and adequate disclosures of Plan provisions and to administer the Plan in accordance with ERISA and the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA.

81.     By the acts and omissions complained of above, including, *inter alia*, by failing to adequately provide notice of Plan provisions and by failing to administer the Plan in accordance with ERISA by using outdated actuarial equivalence factors resulting in inflated offsets and lower benefits and which constitute a forfeiture of benefits and violation of ERISA's actuarial equivalence factors, Defendant fiduciaries deprived Plaintiff and Class Members of rights protected by ERISA and the terms of the Plan and breached their fiduciary duties to Plaintiff and Class Members and are liable to Plaintiff and Class Members as fiduciaries for knowingly participating in the acts or omissions set forth herein and failing to make reasonable efforts to remedy the breaches set forth herein.

82.     As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff and Class Members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA and the Plan has been unjustly enriched.

83.     Plaintiff and Class Members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and violated ERISA § 404 and applicable regulations; enjoining Defendants from purporting to restrict eligibility for retirement benefits including by applying undisclosed Plan provisions and provisions for offsets that result in a forfeiture of vested benefits and benefits that are not actuarially equivalent, reforming the Plan to eliminate undisclosed and unlawful Plan offsets, surcharging the fiduciaries, requiring Defendants to disgorge all profits and benefits gained from the wrongful administration of the Plan in violation of ERISA, and enjoining Defendants to immediately make Plaintiff and all Class Members whole by restoring benefits in accordance with the

terms of the Plan as reformed, requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

**COUNT V**
**(FOR VIOLATIONS OF ERISA'S REQUIREMENTS TO PROVIDE PLAN DOCUMENTS)**

84.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

85.    Section 104(b)(2) of ERISA, 29 U.S.C. § 1024(b)(2), provides in pertinent part:

> The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

86.    Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4), provides in pertinent part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

87.    Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

88.     Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in Section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1) of...ERISA [has been] increased from $100 a day to $110 a day."

89.     As set forth above, despite Mr. Knaus's requests and a legal obligation to furnish documents in response to his written requests, the Plan Administrator delayed in producing documents and denied Plaintiff access to documents which it was required to furnish and which Plaintiff was entitled to receive under § 104 of ERISA, 29 U.S.C. § 1024, and the regulations thereunder. Upon information and belief, Defendant Plan Administrator's failure to timely furnish documents did not result from matters beyond its control.

90.     As a result of the Plan Administrator's acts and omissions set forth above, Plaintiff has been harmed and his right to benefits was chilled, delayed and thwarted.

91.    Defendant Plan Administrator should be enjoined to timely furnish Plan documents and should be assessed a penalty of $110 per day for each separate violation for every day following 30 days after Plaintiff's first document request that Defendants failed to produce or permit inspection of the requested documents through the date the Plan documents are furnished to Plaintiff, together with costs and attorneys' fees.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

A.    Declaring that Defendants violated the terms of the Plan;

B.     Declaring that Defendants violated ERISA §§ 101, 102, 104, 203, 204, 402, 404, 29 U.S.C. §§ 1021, 1022, 1024, 1053, 1054, 1102, 1104, and regulations thereunder;

C.    Enjoining Defendants from violating the terms of the Plan;

D.    Enjoining Defendants from violating ERISA §§ 101, 102, 104, 203, 204, 402, 404, and regulations thereunder;

E.    Ordering reformation of the Plan, *inter alia*, to remove undisclosed offsets and offsets to benefits that violate ERISA's actuarial equivalence and vesting requirements and requiring Defendants to correct their records and pay benefits to Plaintiff and Class Members under the Plan as reformed;

F.    Ordering Defendants to disgorge the value of the benefits that were unlawfully not paid to Plaintiff and Class Members together with all profits attributable thereto;

G.    Directing Defendants to submit to an accounting;

H.   Surcharging Defendants for the full amount of Plaintiff and Class Members' wrongfully denied and wrongfully paid retirement benefits and in such other amounts to make Plaintiff and Class Members whole;

I.   Enjoining Defendants to recalculate Plaintiff and Class Members' retirement benefits and restore the benefits that were wrongfully denied and make Plaintiff and all Class Members whole for all losses retroactive to the date their benefits were resumed following a suspension of benefits;

J.   Awarding Plaintiff $110 a day for each and every day past 30 that the Plan Administrator delayed and refused to provide requested Plan documents;

K.   Awarding attorneys' fees and costs pursuant to ERISA § 502(g) and/or the common fund theory;

L.   Awarding Plaintiff such other and further relief as the Court deems proper and just.

**DATED** this 22nd day of February 2021.

MARTIN & BONNETT, P.L.L.C.

By: *Susan Martin*

Susan Martin (*pro hac vice* app to be filed)
Jennifer Kroll (*pro hac vice* app to be filed)
Michael M. Licata (*pro hac vice* app to be filed)

*Attorneys for Plaintiff and the putative class*